UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SEAN HARVELL,

 Plaintiff

v.

CHET RIGNEY, et al.,

 Defendants

Case No.: 3:23-cv-00101-CSD

**Order**

Re: ECF No. 48

 Before the court is Defendants' motion for summary judgment. (ECF Nos. 48, 48-1 to 48-4, 51-1, 51-2 errata at ECF No. 58.) Plaintiff filed a response. (ECF No. 55.) Defendants filed a reply. (ECF Nos. 59, 59-1 to 59-6.)

 For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

**I. BACKGROUND**

 When Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, he was an inmate in the custody of the Nevada Department of Corrections (NDOC). (Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

 The court screened Plaintiff's complaint and allowed him to proceed on three claims: (1) Eighth Amendment excessive force claims against Defendants Chet Rigney, Shane Brown, Madeline Pickens, and Tasheena Cooke (claims 1 and 2); and (2) a First Amendment retaliation claim against Javier Gutierrez (claim 3). These claims are based on allegations that on June 2, 2022, Rigney, Brown, and Pickens entered Plaintiff's cell for a "planned use of force" to move

Plaintiff to the "hole," a form of administrative segregation. Plaintiff alleges that although he did not resist, Brown and Rigney punched Plaintiff multiple times, injuring his head and eyes and causing him to need glasses. Although Pickens is not alleged to have participated in the beating, Plaintiff claims Pickens was present and failed to intervene. Plaintiff alleges the use of force was ordered by Cooke based on false claims made by Gutierrez that Plaintiff made threats against the children of Ely. Gutierrez allegedly did so in retaliation for Plaintiff filing a grievance against Gutierrez's sister. (*See* Screening Order at ECF No. 6.)

Defendants move for summary judgment, arguing they are entitled to judgment as a matter of law on the merits of all of Harvell's claims. (ECF No. 48 at 5-11; ECF No. 59 at 6.) Defendants also argue that Cooke and Pickens did not personally participate in any alleged constitutional violations. (ECF No. 48 at 10-11.) Finally, Defendants argue that they are entitled to qualified immunity on all of Plaintiff's claims. (ECF No. 48 at 13-17, ECF No. 59 at 7.)

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Excessive Force**

    **1. Legal Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend.  VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v.  Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

**2. Facts**

On June 2, 2022, the day of the use of force incident, Plaintiff was housed in ESP, in Unit 6A, Cell 17B. (ECF No. 59-1 at 4; ECF No. 59-6 at 4.) The use of force was because Plaintiff was refusing to move to a segregation housing unit due to "major disciplinaries" that were pending against him. (ECF No. 48-2 at 2, ECF No. 58-1 at 3, ECF No. 58-4.) Following the incident, Plaintiff was moved to Unit 2B, Cell 33B. (*Id.*)

Defendants provide audio and video recordings of the incident. (ECF Nos. 49, 58-4.) The video includes multiple viewpoints of Unit 6A and the hallway. The audio begins by introducing the cell extraction team (CERT), including Rigney, Brown, and Pickens. The three officers are identified as follows: (1) Rigney is the first man in, using a non-electric shield, (2) Brown is second and responsible for upper right extremities, and (3) Pickens is last and as responsible for securing Plaintiff's lower-left extremities. (*See* ECF No. 49.)

The video shows the five CERT members who were identified by name are dressed the same, in all black with helmets and what appears to be body armor. One person is holding a handheld camera. At least seven individuals other than the five CERT members are present, for a total of at least twelve people surrounding Cell 17B. The team then approaches and opens the cell. Plaintiff is directed to submit to restraints. Then he is directed to turn and officers state that he has refused to turn. The CERT team ordered Plaintiff to "stop resisting" at multiple points during the incident. At one point Plaintiff is heard asking about his property. Yelling and loud bangs are heard throughout the video, including yelling by Plaintiff. (*See* ECF No. 49.)

At first, two CERT members enter the cell. Then, all five members rush into the cell, followed by a sixth individual. At other times, a seventh individual is standing in front of the cell door. When someone is standing in the doorway to the cell, or the other individuals crowd around the doorway, the view into the cell is heavily obstructed. A clear view of Plaintiff is not available until he is being removed from the cell, fully shackled. (*See* ECF No. 49.)

Plaintiff is then walked to the shower, flanked by two CERT members. Plaintiff is placed in the shower and his shackles are removed. An unclothed search is then performed. Plaintiff is again shackled, then moved to be seen by medical. While he is being moved to medical, the video shows his face clearly for the first time. His face is puffy but is not covered in blood. (*See* ECF No. 49.)

According to Plaintiff's sworn complaint, Rigney, Brown, Pickens, and others "assaulted and battered" him while he was in handcuffs.[1] (ECF No. 7 at 5, 7, 9.) Plaintiff states that after leg

---

[1] As Plaintiff's complaint is a written statement subscribed in proper form as true under penalty of perjury, (ECF No. 7 at 11), the court may accept certain statements in the complaint as a substitute for an affidavit. Fed. R. Civ. P. 56 advisory committee's note (2010) ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). Plaintiff's contentions in his pleadings may be considered as evidence to the extent: (1) contents of the

restraints were applied, Rigney and Brown pushed Plaintiff to the ground and began punching him, splitting his head open and causing damage to his eyes. (*Id.*) Plaintiff states that the spit mask which was placed over his head was used to wipe away the blood on his face before he was escorted to see medical staff. (*Id.*)

The medical report from the evaluation after the incident occurred lists Plaintiff's injuries as eyebrow lacerations with eyebrow swelling and minimal bleeding on both sides of the face and bruising around the bridge of his nose. (ECF No. 51-1 at 2 (sealed), ECF No. 58-3.) On June 10, 2022, Plaintiff was seen for an eye exam. (ECF No. 51-2 at 1 (sealed), ECF No. 58-3). The exam notes state that Plaintiff has blurry vision, bruising around the eyes, and his eye is twitching "after getting punched 2 weeks ago." (*Id.*) On May 20, 2022, a spontaneous use of force incident occurred between Plaintiff and two officers. (ECF No. 58-1 at 4, ECF No. 58-4.) Plaintiff's inmate disciplinary history report notes that he sustained an injury to his left eye during the May 20, 2022, spontaneous use of force incident. (*Id.*)

On June 2, 2022, the day of the planned use of force incident, Harvell filed grievance number 2006-31-3864 regarding the use of force. (ECF No. 48-2 at 2.) However, the use of force incident was not referred to the Investigator General's office until February 9, 2023, when it was discovered that the original grievance filed by Plaintiff was improperly processed and not referred earlier. (ECF No. 48-2 at 2, ECF No. 55 at 18.)

The investigative report includes individual reports from the officers involved with the incident. (ECF No. 55 at 18-25.) According to Pickens' report, she attempted to apply leg restraints, but Plaintiff resisted by kneeling down onto his ankles, preventing her from securing

---

document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

the restraint. (*Id.* at 21.) Pickens then states that verbal commands were issued to comply, then force was used to control Plaintiff and apply leg restraints. Pickens assisted with "segmenting" Plaintiff by "maintaining positive control of [his] head." (*Id.*) When the restraints placed on Plaintiff were fully secured, Pickens applied a spit mask to Plaintiff. (*Id.*) Following the unclothed body search of Plaintiff, Pickens assisted in placing the restraints back onto Plaintiff. After Plaintiff was evaluated by medical staff, Pickens assisted in escorting Plaintiff to Unit 2B, Cell 33B. (*Id.* at 21-22.)

Cooke provides a sworn declaration attesting that although she was aware there was a need for a planned use of force against Plaintiff, she did not authorize the use of force on June 2, 2022. (ECF No. 48-2 at 3.) On that day, Cooke attended a supervisor training over Zoom and was not present on the tier. (*Id.*)

**3. Analysis – Rigney and Brown**

In evaluating whether the force used was excessive, the court must evaluate whether the application of force was needed, the relationship between the need for force and amount of force used, the threat reasonably perceived by the officers involved, and efforts made to temper the severity of the application of force. *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). Here, using force to move Plaintiff to a new cell could be justified if he refuses to move and then refuses to be shackled. *Id*. at 6-7. However, the fact that at some point force may have been warranted does not bar the possibility that more force than necessary was used at a later point. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1221-23 (9th Cir. 2022) (concluding that the initial use of the police dog was proportional to the threats to the safety of the officers, but that factual issues precluded summary judgment as to alleged post-handcuff beating and dog bites). Thus, the

timeline of events during the use of force incident is critical to determine whether the use of force was excessive.

Although Defendants provide a video of the incident, the court cannot determine with certainty from the video what happened while the officers were in Plaintiff's cell. Because the view into the cell is obstructed, it is unclear if Plaintiff did, in fact, resist leg restraints. Further, the court is unable to see whether the officers continue to use force despite Plaintiff being fully shackled. Thus, the video neither proves nor disproves the sworn statements made by Plaintiff in his complaint.

Defendants' motion for summary judgment itself seems to acknowledge that there are questions of fact relating to this claim. Specifically, Defendants argue that the video does not show Plaintiff's head was split open, which "calls into question whether the two Defendants actually punched him causing the split as alleged." (ECF No. 48 at 11.) However, the video and medical report show that Plaintiff emerged from the cell with some facial wounds. Additionally, Plaintiff's sworn complaint includes a statement that the spit mask was used to wipe away blood from his face before he was evaluated by medical staff. (ECF No. 7 at 5-6.) As Defendants' argument belies, the video of the incident does not definitively show that Plaintiff's allegations are untrue. Critically, at summary judgment, the court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

If Plaintiff was beaten after being fully shackled, as he alleges in his sworn complaint, then a reasonable jury could find that the force used was excessive. *See Hughes*, 31 F.4th 1221-23. Because the video does not definitively establish what happened inside the cell and Plaintiff provides sworn statements as to his version of the truth, "a jury or judge [must] resolve the

parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Defendants' motion for summary judgment is therefore denied as to Plaintiff's Eighth Amendment excessive force claims against Rigney and Brown.

### 3. Personal Participation - Cooke and Pickens

The court will now address Defendants' argument that Cooke and Pickens did not personally participate in any alleged constitutional violations. (ECF No. 48 at 10-11.) "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted). In other words, the plaintiff "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019) ("inmates must show that each defendant personally played a role in violating the constitution.").

"A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Snow,* 681 F.3d at 989 (quoting *Hansen*, 885 F.2d at 646). The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to

terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

### a. Cooke

The screening order in this case allowed Plaintiff to proceed with an Eighth Amendment excessive force claim against Cooke based on the allegation that Cooke ordered the use of force incident. Defendants argue that Cooke did not personally participate in any alleged constitutional violation because she was not present during the use of force incident, nor did she order or authorize the planned use of force. (ECF No. 48 at 11.) Plaintiff responded by again alleging that Cooke did authorize the use of force and arguing that had Cooke had conducted a proper investigation into Gutierrez's claims instead of ordering the CERT team to remove Plaintiff from his cell, he would not have been harmed. (ECF No. 55 at 8.)

Here, the evidence provided by Defendants shows that Cooke did not order the use of force incident and was neither present at nor involved in the incident itself. Thus, the burden shifts to Plaintiff to provide evidence establishing a dispute of material fact. *Matsushita*, 475 U.S. at 586. Plaintiff does not provide evidence beyond conclusory allegations that Cooke authorized the use of force. (*See* ECF No. 55.) As the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data, Cooke is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claims. *Matsushita*, 475 U.S. at 587.

### b. Pickens

Plaintiff's complaint alleged facts sufficient to proceed with a claim against Pickens for failure to intervene during the alleged excessive force incident. (ECF No. 6 at 6.) "Officers can

be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes*, 31 F.4th at 1223 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000)). "To be liable under section 1983, a defendant official 'must be more than a mere bystander.'" *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)).

      Defendants argue that Pickens should be dismissed from the case because the only allegation against her is that she was present at Plaintiff's cell door during the use of force incident and is therefore not liable because she was a mere bystander. (ECF No. 48 at 10.) In the reply, Defendants argue that Plaintiff failed to provide any evidence or response to the personal participation argument for Pickens. (ECF No. 59 at 4.) However, Plaintiff provides the investigation detail report for the use of force incident, which includes Pickens' report detailing her involvement in the incident. (ECF No. 55 at 18-25.) Critically, the report states that Pickens was not merely present at the door but rather took part in the use of force incident, including helping to shackle and secure the movement of Plaintiff, placing a spit mask on his head, and transporting him to see medical staff. (*Id.* at 20-21.) Furthermore, the video shows that all five identically dressed CERT members rushed into the cell. As one of the named CERT members, the video evidence shows that Pickens did enter the cell, although the obstructed view into the cell does not show exactly what Pickens did. Thus, the evidence shows that Pickens was more than merely present at the incident.

      Where there is no excessive force used, any corresponding failure to intervene claim would fail. However, as is discussed previously, a reasonable jury could find that excessive force was used. Because these facts show that Pickens was close enough to Plaintiff during the use of

force incident to apply shackles and a spit mask, a reasonable jury could find that Pickens had the opportunity but failed to intervene. *Hughes,* 31 F.4th at 1223 (citations omitted). Thus, summary judgment cannot be granted because genuine disputes exist as to whether excessive force was used and, if so, whether Pickens failed to intervene. *Matsushita*, 475 U.S. at 586.

### 5. Rigney, Brown, and Pickens are not entitled to Qualified Immunity

Now the court will turn to Defendants' argument that all are entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claims. Before addressing the substance of this argument, the court notes that Defendants' motion for summary judgment merely recites the legal standard for qualified immunity and then briefly concludes that Defendants are entitled to qualified immunity. (ECF No 13-17.) "Qualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). Contrary to what Defendants' reply suggests, it is Defendants' burden to show they are entitled to qualified immunity. (*See* ECF No. 59 at 7 ("Harvel has failed to show that Defendants are not entitled to qualified immunity. Thus, Defendants are entitled to qualified immunity.").)

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether a defendant is entitled to qualified immunity, the court considers "whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citations omitted). "Whether a constitutional right is clearly established is a question of law for the court

to decide." *Id.* (citing *Elder v. Holloway,* 510 U.S. 510, 511 (1994); *Morales v. Fry*, 873 F.3d 817, 825 (9th Cir. 2017)).

The unconstitutionality of using force maliciously for the purpose of causing harm was clearly established at the time of the incident. *See Hudson*, 503 U.S. at 6-7. However, there are disputed factual issues that are necessary to determine whether Rigney, Brown, and Pickens used unconstitutional excessive force. Those issues must be determined first by the jury before the court can rule on qualified immunity. *See Morales v. Fry*, 873 F.3d 817, 822-24 (9th Cir. 2017). Therefore, Rigney, Brown, and Pickens are not entitled to qualified immunity at this juncture.

**B. First Amendment Retaliation**

    **1. Legal Standard**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id.* (citations omitted).

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at

806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted). A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citations omitted) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to the prior lawsuit); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Circumstantial evidence can include proximity in time between the proximity in time between the protected conduct and the alleged retaliation. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citations omitted).

**2. Facts**

On June 1, 2022, Gutierrez wrote a notice of charges against Plaintiff based on comments he made that day. (ECF No. 48-3 at 2; ECF No. 58-4 at 3.) According to Gutierez's sworn declaration, Gutierrez believed Plaintiff "verbalized a threat to [Gutierrez]." (ECF No. 58-2.) The incident report states that Plaintiff threatened to shoot up an elementary school in Ely, in reference to the shooting which had just occurred in Uvalde, Texas. (ECF No. 58-1 at 4, ECF No. 58-4.) After Gutierrez wrote the notice of charges, he declares that he did not have any further involvement with that disciplinary issue. (ECF No. 58-2.)

On June 1, 2022, Plaintiff filed only one grievance, Grievance No. 2006-31-38105. (ECF Nos. 59-3, 59-6, *see* ECF No. 59-2.) The subject of this grievance is Plaintiff's property and his

legal work. (ECF Nos. 59-3, 59-6.) The grievance does not reference Gutierrez or any write-ups. (*Id.*)

On June 11, 2022, Plaintiff filed a grievance relating to Gutierrez's alleged retaliation. (ECF No. 59-2 at 12, ECF No. 59-6.) In the grievance, Plaintiff claims he turned in a grievance on June 1, 2022, which prompted him to be moved to "the hole." (*Id.*)

According to the sworn declaration from Gutierrez, he does not know of, nor is he related to, anyone who previously dated Plaintiff. (ECF No. 58-2.) Gutierrez does not have a sister. (*Id.*)

**3. Analysis**

To succeed on a First Amendment retaliation claim, Plaintiff must show, among other elements, that Gutierrez retaliated *because* of Plaintiff's protected conduct. *Jones*, 791 F.3d at 1035. Plaintiff argues that because he filed a grievance against Gutierrez, Gutierrez retaliated against Plaintiff by reporting to Cooke that Plaintiff made threats against children who reside in Ely. (ECF No. 55 at 2-3.) However, Defendants provide evidence that shows Plaintiff's grievance was filed *after* the use of force incident on June 2, 2022. Thus, Plaintiff cannot show circumstantial evidence of retaliation based on the time frame of filing the grievance and the use of force incident. *See Brodheim*, 584 F.3d at 1271.

Here, Plaintiff's only argument in support of his retaliation claim is that Gutierrez retaliated because Plaintiff filed a grievance against Gutierrez. As Defendants have shown that the grievance in question was filed after the alleged retaliatory action, Plaintiff has failed to meet his burden of providing evidence to create a dispute of material facts. *Matsushita*, 475 U.S. at 586. Thus, the undisputed material facts show that if any adverse action did occur, those actions were not taken *because* of Plaintiff's protected conduct. *See Celotex*, 477 U.S. at 323-25 (moving party can prevail on summary judgment by demonstrating that the nonmoving party cannot

16

establish an element essential to that party's case on which that party will have the burden of proof at trial). Consequently, Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim against Gutierrez is granted.

## IV. CONCLUSION

Defendants' motion for summary judgment (ECF No. 48) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The motion is **DENIED** as to Plaintiff's Eighth Amendment excessive force claims against Rigney, Brown, and Pickens. The parties shall proceed to trial on Plaintiff's Eighth Amendment claims against Defendants Rigney, Brown, and Pickens.

(2) The motion is **GRANTED** as to Plaintiff's Eighth Amendment excessive force claims against Cooke. The Clerk shall enter judgment in favor of Cooke.

(3) The motion is **GRANTED** as to Plaintiff's First Amendment retaliation claim against Gutierrez. The Clerk shall enter judgment in favor of Gutierrez.

The Joint Pretrial Order is due **30 days** from the date of this Order, on **February 3, 2025.**

**IT IS SO ORDERED.**

Dated: January 6, 2025

_____
Craig S. Denney
United States Magistrate Judge